No. 24-2036

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

MICHELLE NGUYEN, ET AL.,

*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS THE
CALIFORNIA ATTORNEY GENERAL, ET AL.,

*Defendants-Appellants.*

———————————

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:20-cv-02470-WQH-MMP
The Honorable William Q. Hayes, Judge

———————————

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3
## FOR A STAY PENDING APPEAL

## RELIEF REQUESTED BY APRIL 27, 2024

———————————

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
ANTHONY R. HAKL
*Supervising Deputy Attorney General*

JERRY T. YEN
*Deputy Attorney General*
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7836
  Fax: (916) 324-8835
  Email: Jerry.Yen@doj.ca.gov
*Attorneys for Defendants-Appellants Rob
Bonta and Allison Mendoza, in their
official capacities*

April 4, 2024

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................ 1

Background ................................................................................ 4

      A.    The OGM Law ................................................................ 4

      B.    Procedural History ........................................................ 6

Argument ................................................................................... 7

      I.    The Attorney General Is Likely to Succeed on the Merits ....... 9

      II.    The Equitable Factors Weigh Strongly in Favor of a Stay ..... 16

Conclusion ............................................................................... 18

Statement of Related Cases ......................................................... 19

Certificate of Compliance ........................................................... 20

# TABLE OF AUTHORITIES

**Page**

CASES

*Coal. for Econ. Equity v. Wilson*
   122 F.3d 718 (9th Cir. 1997) ...............................................................16

*District of Columbia v. Heller*
   554 U.S. 570 (2008).................................................................*passim*

*Duncan v. Becerra*
   366 F. Supp. 3d 1131 (S.D. Cal. 2019)...............................................17

*Duncan v. Becerra*
   No. 17-cv-1017-BEN-JLB, 2019 WL 1510340 (S.D. Cal. Apr. 4, 2019) .................................................................................................17

*Duncan v. Bonta*
   83 F.4th 803 (9th Cir. 2023) ...................................................2, 16, 17

*FTC v. Qualcomm Inc.*
   935 F.3d 752 (9th Cir. 2019) ...............................................................1

*Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*
   512 F.3d 1112 (9th Cir. 2008) .............................................................16

*Hilton v. Braunskill*
   481 U.S. 770 (1987)..............................................................................7

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*
   5 F.4th 407 (4th Cir. 2021) ...........................................................11, 12

*Leiva-Perez v. Holder*
   640 F.3d 962 (9th Cir. 2011) ...............................................................7

*Maryland v. King*
   567 U.S. 1301 (2012)........................................................................2, 16

*Nat'l Rifle Ass'n of Am. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*
   700 F.3d 185 (5th Cir. 2012) ...............................................................13

ii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*New York State Rifle & Pistol Ass'n v. Bruen*
  597 U.S. 1 (2022)..........................................................................*passim*

*Nken v. Holder*
  556 U.S. 418 (2009)...........................................................................1, 7

*Ocean State Tactical, LLC v. Rhode Island*
  95 F.4th 38 (1st Cir. 2024)..................................................................15

*Or. Firearms Fed'n v. Kotek*
  __ F. Supp. 3d __, 2023 WL 4541027 (D. Or. July 14, 2023)...........15

*Pena v. Lindley*
  898 F.3d 969 (9th Cir. 2018) ..............................................................11

*Rhode v. Becerra*
  2020 WL 9938296 (9th Cir. May 14, 2020).........................................7

*Rhode v. Bonta*
  No. 24-542, Dkt. No. 8 (9th Cir. Feb. 5, 2024) ....................................2

*Rupp v. Bonta*
  2024 WL 1142061 (C.D. Cal. March 15, 2024)...................................15

*United States v. Holton*
  2022 WL 16701935 (N.D. Tex. Nov. 3, 2022) ....................................14

*United States v. James*
  677 F. Supp. 3d 329 (D.V.I. 2023) ......................................................12

*United States v. Perez-Garcia*
  __ F. 4th __, 2024 WL 1151665 (9th Cir. March 18, 2024) ........13, 15

## TABLE OF AUTHORITIES
### (continued)

**Page**

STATUTES

California Penal Code
    § 27535.......................................................................................................1, 5
    § 27535(b)......................................................................................................6
    § 27535(b)(7), (8), and (11)......................................................................5, 6
    § 27540(f).................................................................................................1, 12

2019 Cal. Stat. ch. 737 .........................................................................................5

2022 Cal. Stats. ch. 76.........................................................................................5

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR
## A STAY PENDING APPEAL

## INTRODUCTION

The Attorney General respectfully requests that the Court grant a stay of the district court's permanent injunction and judgment. The district court enjoined California's laws limiting the purchase of firearms from licensed firearms dealers to one purchase every thirty days. Cal. Penal Code §§ 27535, 27540(f). This limitation is typically referred to as the one-gun-a-month or OGM law. While California law does not limit the total number of firearms that any person may possess, the OGM law addresses the particular dangers associated with bulk purchases that occur within a relatively brief period of time, such as straw purchases and illegal firearms trafficking. The law makes it more difficult for criminals to acquire firearms by reducing the flow of guns into the black market and thus curtailing the illegal gun market. The law also makes it more difficult for individuals to stockpile firearms for criminal activity. Absent a further stay from this Court, the district court's injunction will irrevocably alter the status quo by allowing bulk firearm purchases, which have been prohibited as to certain types of firearms for years.

The purpose of a stay is to "simply suspend[] judicial alteration of the status quo," *FTC v. Qualcomm Inc.*, 935 F.3d 752, 757 (9th Cir. 2019), "ensuring that appellate courts can responsibly fulfill their role in the judicial process," *Nken v.*

1

*Holder*, 556 U.S. 418, 427 (2009).  Because an injunction barring the enforcement of a duly enacted statute poses a substantial risk of harming the public interest, appellate courts routinely issue stays pending appeal when lower courts enjoin a statute.  *See, e.g.*, *Maryland v. King*, 567 U.S. 1301, 1302-1303 (2012) (Roberts, C.J., in chambers); *Duncan v. Bonta*, 83 F.4th 803, 805-06 (9th Cir. 2023) (en banc); *Rhode v. Bonta*, No. 24-542, Dkt. No. 8 (9th Cir. Feb. 5, 2024).  And that relief is especially appropriate here given the strength of the Attorney General's merits arguments and because the equitable considerations overwhelmingly favor maintaining the status quo until this Court has ruled on those arguments.

On the merits, the district court's application of the framework in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) misunderstood the scope of the conduct protected by the Second Amendment as well as the standards required under *Bruen's* historical inquiry.  In particular, the Second Amendment's text—concerning keeping and bearing arms—does not cover the unconditional right to purchase firearms, let alone a right to purchase any number of firearms in a single 30-day period.  *See District of Columbia v. Heller*, 554 U.S. 570, 583-84 (2008) (explaining that "keep arms" refers to possessing firearms, and "bear arms" refers to carrying firearms "for a particular purpose—confrontation").  The OGM law falls within the category of presumptively lawful regulatory measures recognized in *Heller*, because it regulates when a commercial firearm transaction can take

2

place.  *See id.* at 626-27 ("[N]othing in our opinion should be taken to cast doubt on . . . laws imposing conditions and qualifications on the commercial sale of arms.").  *Bruen* did not change that category.  *See* 597 U.S. at 80-81 (Kavanaugh, J., concurring).  Even if this Court determines that it must look to our "Nation's historical tradition," *id.* at 17 (majority opinion), that historical inquiry is not "a regulatory straightjacket," *id.* at 30.  The State need not identify a historical statute that is a "dead ringer" for a challenged law.  *Id.*  And "a more nuanced approach" is appropriate where—as here—the law addresses "unprecedented societal concerns or dramatic technological changes."  *Id.* at 27.  Under a proper application of *Bruen*, the Attorney General is likely to succeed on the merits on appeal, and at minimum has presented substantial questions on the merits for this Court's consideration.

The equitable considerations also overwhelmingly support a stay pending appeal.  Without a stay, bulk firearm purchases would suddenly become legal in the State, and bulk purchases of handguns would be permitted for the first time in more than 20 years.  Such purchases would inevitably make it easier for would-be criminals to stockpile private arsenals and increase the number of straw purchases and illegal firearms transactions, jeopardizing public safety.  Even if the challenged provisions were later upheld, it would be virtually impossible for the State to identify and unwind any unlawful straw purchases that occurred during the interim.

A stay pending appeal would maintain the status quo while this Court resolves the merits of the Attorney General's appeal.  At the same time, law-abiding Californians would still be able to obtain and possess any number of firearms for self-defense and other lawful purposes, so long as they comply with the 30-day waiting period when purchasing firearms directly from licensed dealers.

The district court granted a temporary stay of its permanent injunction, which is scheduled to take effect on April 28.  If this Court is unable to rule on this motion before that date, the Attorney General requests that the Court enter an administrative stay until the motion is resolved.  If the Court denies the motion, the Attorney General requests a 14-day administrative stay from the date of the denial or until May 13, whichever is later, to allow time for the Attorney General to consider whether to seek further relief.

## BACKGROUND

### A.   The OGM Law

In 1999, the California Legislature passed the OGM law, which limited the purchase of handguns to one every thirty days in order "to stop one gun purchaser from buying several firearms and transferring a firearm to another person who does not have the legal ability to buy a gun him/herself.  Such a transfer is referred to as a 'straw transaction.'"  Assemb. B. 202, March 16, 1999 Assembly Committee on Public Safety Hearing, 1999-2000 Reg. Sess. (Cal. 1999)) at 3.  Without a limit on

4

the number of handguns that could be purchased within a given period of time, it was easier for "straw purchasers to acquire guns for another person or for street dealers to acquire guns legitimately." *Id*. Thus, the Legislature found that the law would "curtail the illegal gun market, disarm criminals, and save lives." *Id*. The OGM law does not otherwise limit the number of firearms or quantity of ammunition that a person may possess for self-defense.

In 2019, California included semiautomatic centerfire rifles under the OGM law, and that addition went into effect on July 1, 2021. 2019 Cal. Stat. ch. 737 (S.B. 61), § 5 (amending Cal. Penal Code § 27535). In doing so, the Legislature noted that "[m]ore and more shootings [were] occurring with long guns." S.B. 61, June 25, 2019 Assembly Committee on Public Safety Hearing, 2019-2020 Reg. Sess. (Cal. 2019) at 3.

While this case was pending, in 2022, the California Legislature expanded the OGM law to include any firearm, completed frames or receivers, or firearm precursor parts. 2022 Cal. Stats. ch. 76 (Assemb. B. 1621), §§ 18-21. This went into effect on January 1, 2024. *Id*.

There are some limited exceptions to California's OGM law. For example, private party transactions conducted through a licensed dealer, transactions conducted through a law enforcement agency, and replacement of a firearm reported lost or stolen are exempt from the OGM requirement. Cal. Penal Code

5

§ 27535(b)(7), (8), and (11).  Peace officers, licensed private security businesses, and licensed gun collectors are also exempt from the OGM law, among others.  *Id.* § 27535(b).

## B.  Procedural History

Plaintiffs[1] raise Second Amendment and Equal Protection challenges to California's OGM law.  Complaint, Dist. Ct. Dkt. 1.  After completion of discovery, the parties filed cross-motions for summary judgment.  Dist. Ct. Dkts. 23, 29.  After the Supreme Court decided *Bruen*, the district court ordered supplemental briefing to address the application of *Bruen* to the summary judgment motions.  Dist. Ct. Dkt. 38.  The district court ultimately granted summary judgment to Defendants on the equal protection claim, but otherwise denied the parties' motions and permitted additional expert discovery "concerning whether the challenged law is consistent with the Nation's historical tradition of firearm regulation."  Dist. Ct. Dkt. 49.

After the completion of discovery, the parties filed renewed cross-motions for summary judgment.  Dist. Ct. Dkts. 59, 60.  On March 11, 2024, the district court issued an order denying Defendants' motion and granting Plaintiffs' motion.  Ex. 1, Dist. Ct. Dkt. 69 (Order).  The district court concluded that acquiring

---

[1] Plaintiffs comprise four individuals ("Individual Plaintiffs"), two firearm retailers and their respective owners, and three nonprofit entities focused on Second Amendment rights.  Complaint ¶¶ 7-17.

6

multiple firearms within a 30-day period was conduct presumptively protected by the text of the Second Amendment, *id*. at 16; the OGM law was not a "longstanding" regulation that would fall under the types of presumptively lawful regulations recognized in *Heller*, *id*. at 11-13; and the historical regulations cited by the State were not "relevantly similar" to the OGM law, *id*. at 18-23.

On March 28, 2024, the district court entered judgment enjoining California from enforcing the OGM law, but stayed enforcement of the judgment for thirty days. Ex. 2, Dist. Ct. Dkt. 70.

## ARGUMENT

A party seeking a stay pending appeal must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of relief, that the balance of equities tip in its favor, and that a stay is in the public interest. *Nken*, 556 U.S. at 425-426. To obtain a stay, a party "need not demonstrate that it is more likely than not that they will win on the merits" or that "ultimate success is probable." *Leiva-Perez v. Holder*, 640 F.3d 962, 966-967 (9th Cir. 2011). Rather, "a substantial case on the merits" or "serious legal questions" will suffice "so long as the other factors support the stay." *Id.* at 966, 968 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987); *see, e.g.*, *Rhode v. Becerra*, 2020 WL 9938296, at *1 (9th Cir. May 14, 2020).

The Attorney General satisfies that standard.  The proposed course of conduct here—purchasing more than one firearm from a licensed firearms dealer within a thirty-day period—does not prevent individuals from "keep[ing]" or "bear[ing]" arms and thus does not fall within the scope of the Second Amendment.  The OGM law is the exact type of "condition[] and qualification[] on the commercial sale of firearms" that the Supreme Court has endorsed as "presumptively lawful."  *Heller*, 554 U.S. at 626-627, 627 n.26; *see also Bruen*, 597 U.S. at 81 (Kavanaugh, J., concurring).  And even if this Court were to assume that the OGM law implicates rights protected by the plain text of the Second Amendment, the law is consistent with our Nation's historical tradition of firearm regulation.  At a minimum, this case raises serious and substantial legal questions justifying a stay.  And the equitable considerations overwhelmingly favor preserving the status quo during this appeal.  California residents will remain able to purchase any number of firearms so long as they comply with the 30-day waiting period, and an unlimited quantity of ammunition.  But without a stay, individuals prohibited from possessing firearms will gain a new avenue of obtaining firearms in California—before this Court has had a chance to resolve the questions presented by the State's appeal.

## I.    THE ATTORNEY GENERAL IS LIKELY TO SUCCEED ON THE MERITS

The district court misconstrued the scope of the conduct protected by the Second Amendment and misapplied *Bruen*'s historical analysis to the OGM law. As discussed further below, the Attorney General is likely to succeed on the merits of this appeal—and the legal questions are surely serious enough to justify a stay pending appeal.

The regulation challenged here is consistent with the Second Amendment under the standards announced in *Bruen*. *Bruen* announced a framework for evaluating Second Amendment claims that is "centered on constitutional text and history." *Bruen*, 597 U.S. at 22. At the threshold, plaintiffs must establish that the "textual elements" of the Second Amendment—the right to "keep and bear" protected "Arms"—cover their desired course of conduct. *Id.* at 31-32; *see id.* at 24. The Supreme Court has repeatedly recognized that the right secured by the Second Amendment's text "'is not unlimited.'" *Id.* at 21. In *Heller*, the court acknowledged that laws "imposing conditions and qualifications on the commercial sale" are "presumptively lawful regulatory measures." 554 U.S. at 626-27 & n.26. That limitation on the scope of the Second Amendment was not altered by *Bruen*. Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to underscore the "limits of the Court's decision," explaining that the Second Amendment "allows a 'variety' of gun regulations," and reiterating

9

*Heller*'s pronouncement that "conditions and qualifications on the commercial sale of arms" are presumptively lawful. *Id.* at 80-81 (Kavanaugh, J., concurring).

If the challenged regulation concerns conduct protected by the plain text of the Second Amendment, the government "must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 24. However, when a challenged law addresses either "unprecedented societal concerns or dramatic technological changes," a "more nuanced approach" is needed. *Id*. at 27. The district court's application of *Bruen*'s standards was flawed in several respects.

First, the OGM law does not implicate conduct protected by the Second Amendment's plain text because it does not prevent law-abiding citizens from keeping or bearing arms for self-defense. The right to "keep arms" refers to possessing arms, and the right to "bear arms" refers to carrying arms "for a particular purpose—confrontation." *Heller*, 554 U.S. at 583-584. The Court in *Bruen* also emphasized that "self-defense is 'the *central component* of the [Second Amendment] right itself.'" 597 U.S. at 32-33 (citations omitted). The OGM law does not restrict who may keep or bear firearms nor does it limit an individual's ability to carry a firearm for self-defense. It only requires individuals to wait 30 days before purchasing an additional firearm from a licensed dealer. In fact, the Individual Plaintiffs admit that the OGM law still allows them to own and obtain

firearms for self-defense.  *See* Ex. 3 (Individual Plaintiffs' Responses to Requests
for Admission), Dist. Ct. Dkt. 59-5.

The district court concluded the OGM law implicates protected conduct
because the Second Amendment is not "limited to possession and acquisition of a
single firearm, or that the acquisition of additional firearms is inherently subject to
additional limitations."  Order 15.  This misconstrues the scope of the OGM law.
The law does not impose any numerical limit on the number of firearms that
California residents may acquire and possess.  In other words, the OGM law does
not prevent any individual from keeping and bearing arms, and therefore does not
implicate the plain text of the Second Amendment.

Second, the OGM law imposes a "condition[] and qualification[] on the
commercial sale of arms," which makes the law among those "presumptively
lawful regulatory measures" that governments may adopt consistent with the
Second Amendment.  *Heller*, 554 U.S. at 626-627, 627 n.26.  Presumptively lawful
restrictions on commercial sales generally "go to *where* and *when* such [] sales can
take place" as opposed to "*what* can be sold."  *Pena v. Lindley*, 898 F.3d 969, 1009
(9th Cir. 2018) (Bybee, J., concurring in part and dissenting in part).  The Fourth
Circuit also noted that "a law's substance, not its form, determines whether it
qualifies as a condition on commercial sales."  *Hirschfeld v. Bureau of Alcohol,
Firearms, Tobacco & Explosives*, 5 F.4th 407, 416 (4th Cir. 2021) (citation

11

omitted), *vacated on other grounds*, 14 F.4th 322 (4th Cir. 2021). In other words, a commercial regulation is considered a "condition on commercial sales" if it does not operate as a functional prohibition or total ban on buying a gun. *See id*.; *see also United States v. James*, 677 F. Supp. 3d 329, 343 (D.V.I. 2023) (stating that a statute is a commercial regulation when it targets transfer of a firearm and does not criminalize mere possession). Here, the OGM law regulates *when* licensed firearms dealers may sell a firearm to someone who previously purchased one from a licensed dealer. Cal. Penal Code § 27540(f). And the OGM law is far from a total ban because it allows individuals to own and obtain firearms for self-defense—including, as noted earlier, the Individual Plaintiffs. *See* Ex. 3 (Individual Plaintiffs' Responses to Requests for Admission). Thus, the OGM law is properly understood as a "presumptively lawful" condition on the commercial sale of firearms.

The district court imposed a requirement that regulation must also be "longstanding," in addition to falling within one of the categories set forth in *Heller*, before it may be considered to be presumptively lawful. And in the court's view, a twentieth century regulation is "longstanding" only if it is supported by relevant historical analogues from the Founding or Reconstruction eras. Order 11-14. This is an incorrect reading of *Heller*. *Heller* considered firearm possession bans on felons and the mentally ill to be longstanding even though they

12

were not enacted until the 1960s—and it reached that conclusion without

identifying historical precursors to those laws. *Nat'l Rifle Ass'n of Am. v. Bureau*

*of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196-97 (5th Cir.

2012) (citations omitted); *see Heller*, 554 U.S. at 626-627.

Finally, even if this Court were to consider the historical evidence, the OGM

law is "consistent with the Nation's historical tradition of firearm regulation."

*Bruen*, 597 U.S. at 24. The Supreme Court emphasized that "[w]hile the historical

analogies [in *Bruen*] and in *Heller* are relatively simple to draw, other cases

implicating unprecedented societal concerns or dramatic technological changes

may require a more nuanced approach." *Id.* at 27. That kind of approach is

appropriate here. During the founding era and Reconstruction Era, firearms were

not generally available for bulk purchases, and thus firearms trafficking was not as

much of a concern as it is today. *See* Ex. 4, (McCutchen Decl.), Dist. Ct. Dkt.

59-4, ¶¶ 9, 15, 18; Ex. 5 (Rivas Decl.), Dist. Ct. Dkt. 59-4, ¶¶ 8, 25-27, 29; Ex. 6

(Bisbee Decl.), Dist. Ct. Dkt. 59-4, ¶¶ 9-11.

Under *Bruen*'s "more nuanced approach" to the historical inquiry, 597 U.S. at

27, the OGM law is consistent with historical tradition. *See United States v. Perez-*

*Garcia*, __ F. 4th __, 2024 WL 1151665, *18 (9th Cir. March 18, 2024) (stating

that "[i]n applying the Second Amendment, we do not isolate each historical

precursor and ask if it differs from the challenged regulation in some way," but

13

"instead examine the historical evidence as a whole.")  That tradition is reflected in the historical laws presented to the district court below, including laws enacted in the 18th and 19th centuries regulating the purchase and storage of gunpowder, restricting the sale of pistols and other weapons, and taxing the sale of firearms and requiring licenses to sell firearms.  D. Ct. Dkt. 59.  These historical regulations are relevantly similar to the OGM law in terms of both burden and justification.  They imposed comparable burdens by still permitting the acquisition and possession of firearms for lawful self-defense.  And they advanced comparable public-safety goals by limiting the access to firearms by dangerous individuals.  *See, e.g.*, *United States v. Holton*, 2022 WL 16701935, *5 (N.D. Tex. Nov. 3, 2022) (finding historical regulations, including those imposing taxes on firearms, addressed the goal of ensuring dangerous individuals did not obtain firearms).

Nevertheless, even though it purported to conduct a more "nuanced" inquiry, the district court concluded that the State identified no historical analogue supporting the OGM law.  Order 23-24.  But it reached that conclusion only because the relevant historical laws were not identical to the OGM law.  For example, the district court rejected the historical laws because they did not impose an identical burden—limiting the quantity and frequency in acquiring firearms.  *Id.* at 19, 21, 22, 23.  In another example, the district court rejected laws regulating "concealable" weapons because the OGM law limits the purchase of a "broader

14

class of arms." *Id.* at 22.  This is in stark contrast to *Bruen*'s central premise that the State need not proffer a "dead ringer" and may draw analogies to "relevantly similar" laws that arose in different contexts but imposed comparable burdens. 597 U.S. at 3, 27-28, 29; *see also Perez-Garcia*, 2024 WL 1151665, at *10, 18.

The district court further rejected the analogies to the historical laws because the purpose of the laws were not identical.  For instance, the district court dismissed the analogy to gunpowder regulations because those regulations addressed fire-related risks and not illegal gun trafficking or gun violence.  Order 19.  But gunpowder regulations also limited the accumulation of gunpowder in the interest of public safety, and set absolute limits on the quantity of gunpowder that any particular person could possess to advance that goal.  Many other courts have considered gunpowder regulations to be "relevantly similar" to regulations addressing other public safety concerns.  *See Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 49 (1st Cir. 2024); *see also Or. Firearms Fed'n v. Kotek*, __ F. Supp. 3d __, 2023 WL 4541027, *40 (D. Or. July 14, 2023); *Rupp v. Bonta*, 2024 WL 1142061, *35 (C.D. Cal. March 15, 2024) (concluding that gunpowder regulations were analogous to the ban on assault weapons and stating that the "more nuanced approach allows [sic] California to . . .  reach[] for a well-established tool in the regulatory toolkit—even if the Founders used that tool to

address slightly different regulatory concerns such as fire-safety danger created by gunpowder . . . .").

## II. THE EQUITABLE FACTORS WEIGH STRONGLY IN FAVOR OF A STAY

The equitable considerations also overwhelmingly favor a stay to preserve the status quo pending appeal. As a general matter, the "public interest" is harmed where, as here, a lower court invalidates and enjoins a duly enacted statute. *See, e.g.*, *Maryland*, 567 U.S. at 1303; *Golden Gate Rest. Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008). And a State necessarily "suffers irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997); *see also Maryland*, 567 U.S. at 1303.

There is an especially grave threat of irreparable harm here. California's OGM law has been in place as to all handguns for over two decades, and as to many other firearms for years. It has helped reduce illegal firearms trafficking and straw purchases. *See* Ex. 6 (Bisbee Decl.) ¶¶ 9–11. As noted above, absent a stay, the Attorney General is concerned that there could be a flood of bulk purchases across the State, and a corresponding increase in illegal firearms trafficking. The Attorney General's concerns are not theoretical, particularly in light of what occurred in 2019 after a district court issued a judgment in *Duncan v. Bonta*—the case challenging the constitutionality of high-capacity magazines—without any

16

stay. *See Duncan v. Becerra*, 366 F. Supp. 3d 1131, 1186 (S.D. Cal. 2019). In *Duncan*, the district court did not issue a stay pending appeal until four days after its injunction went into effect, thus permitting anyone who acquired a large-capacity magazine during the interim to keep them during the appeal. *Duncan v. Becerra*, No. 17-cv-1017-BEN-JLB, 2019 WL 1510340, at *3 (S.D. Cal. Apr. 4, 2019) (*ex parte* application filed April 1, 2019 and order staying judgment issued April 4, 2019). During that interim period, over one million large-capacity magazines reportedly flooded into the State. *See* Matthew Green, *Gun Groups: More than a Million High-Capacity Magazines Flooded California During Weeklong Ban Suspension*, KQED.org, Apr. 12, 2019, *available at* https://bit.ly/3wfinEU (last visited April 2, 2024). Here, a similar threat of mass bulk purchases of firearms strongly favors imposing a stay of the judgment pending appeal. Even if this Court were to reverse the district court on appeal, it would be impracticable if not impossible for the State to restore the status quo ante by removing from circulation excess firearms sold during the appeal.

At the same time, any harm to plaintiffs from a stay would be comparatively minor. Plaintiffs will remain able to purchase firearms for lawful self-defense, so long as they comply with the OGM requirement when they purchase firearms directly from licensed dealers. Any temporary inconvenience to plaintiffs from continuing to abide by these requirements would not outweigh the harm posed by

17

the State by suddenly authorizing bulk purchases for all types of firearms.  There is no reason to allow such purchases before this Court has resolved the important questions at issue in this appeal.

## CONCLUSION

The Court should stay the district court's order and permanent injunction pending appeal.  If necessary, the Court should issue an administrative stay before April 27, 2024, to preserve the status quo until the Court resolves this motion.

Dated:  April 4, 2024                    Respectfully submitted,


ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
ANTHONY R. HAKL
*Supervising Deputy Attorney General*

*/s/ Jerry T. Yen*

JERRY T. YEN
Deputy Attorney General
*Attorneys for Defendants-Appellants Rob Bonta and Allison Mendoza, in their official capacities*

18

## STATEMENT OF RELATED CASES

To the best of our knowledge, there are no related cases.


Dated:  April 4, 2024                              */s/ Jerry T. Yen*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing emergency motion complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it consists of 4,108 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).  This emergency motion complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated:  April 4, 2024                                 */s/ Jerry T. Yen*