No. 24-2036

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHELLE NGUYEN, ET AL.,
*Plaintiffs-Appellees*,

v.

ROB BONTA, IN HIS OFFICIAL CAPACITY AS THE
CALIFORNIA ATTORNEY GENERAL, ET AL.,
*Defendants-Appellants*.

**On Appeal from the United States District Court
for the Southern District of California**
No. 3:20-cv-02470-WQH-MMP
The Honorable William Q. Hayes, Judge

**REPLY IN SUPPORT OF EMERGENCY MOTION UNDER CIRCUIT
RULE 27-3 FOR A STAY PENDING APPEAL**

**<u>RELIEF REQUESTED BY APRIL 27, 2024</u>**

ROB BONTA
*Attorney General of California*
THOMAS S. PATTERSON
*Senior Assistant Attorney General*
ANTHONY R. HAKL
*Supervising Deputy Attorney General*

JERRY T. YEN
*Deputy Attorney General*
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7836
  Fax: (916) 324-8835
  Email: Jerry.Yen@doj.ca.gov
*Attorneys for Defendants-Appellants Rob Bonta and Allison Mendoza, in their official capacities*

April 19, 2024

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................ 1

Argument .................................................................................................... 2

    I.    The Attorney General is Likely to Succeed on the Merits ....... 2

    II.    The Equitable Factors Weigh Strongly in Favor of a Stay ....... 7

Conclusion .................................................................................................. 8

Certificate of Compliance ......................................................................... 10

# TABLE OF AUTHORITIES

Page

**CASES**

*District of Columbia v. Heller*
   554 U.S. 570 (2008) ............................................................................. 1, 3

*Ezell v. City of Chicago*
   651 F.3d 684 (7th Cir. 2011) ..................................................................... 5

*FTC v. Qualcomm, Inc.*
   935 F.3d 752 (9th Cir. 2019) ..................................................................... 1

*Gazzola v. Hochul*
   88 F.4th 186 (2d Cir. 2023) ....................................................................... 3

*Golden Gate Rest. Ass'n v. City & County of San Francisco*
   512 F.3d 1112 (9th Cir. 2008) ................................................................... 8

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*
   5 F.4th 407 (4th Cir. 2021) ........................................................................ 3

*Leiva-Perez v. Holder*
   640 F.3d 962 (9th Cir. 2011) ................................................................. 2, 6

*New York State Rifle & Pistol Ass'n v. Bruen*
   597 U.S. 1 (2022) ............................................................................. *passim*

*Nken v. Holder*
   556 U.S. 418 (2009) ................................................................................... 1

*Rhode v. Becerra*
   2020 WL 9938296 (9th Cir. May 14, 2020) ......................................... 6, 7

*Teixeira v. County of Alameda*
   873 F.3d 670 (9th Cir. 2019) ................................................................. 3, 6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*United States v. Perez-Garcia*
  96 F.4th 1166 (9th Cir. 2024) ................................................................. 5

**OTHER AUTHORITIES**

Jacob D. Charles, *On Sordid Sources in Second Amendment
  Litigation*, 76 Stan. L. Rev. Online 30 (2023). ........................................ 6

William Baude & Stephen E. Sachs, *Originalism & the Law of
  the Past*, 37 L. & Hist. Rev. 809 (2019) .................................................. 6

## INTRODUCTION

A stay pending appeal simply "suspend[s] judicial alteration" of the status quo. *FTC v. Qualcomm, Inc.*, 935 F.3d 752, 757 (9th Cir. 2019) (quoting *Nken v. Holder*, 556 U.S. 418, 429 (2009)). While stay relief is never awarded "out of right," *Nken*, 556 U.S. at 427 (citation omitted), it is appropriate where a district court invalidates a duly enacted statute, the underlying issues involve serious questions on the merits, and the equitable factors favor relief. *See* Mot. 7.

The Attorney General is likely to succeed as to the merits, and the equitable considerations overwhelmingly favor stay relief. As to the merits, plaintiffs' opposition reflects a fundamental misunderstanding of the text-and-history analysis required under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). California's law limiting the purchase of firearms from licensed firearms dealers to one purchase every thirty days (the "OGM law") does not prevent individuals from keeping or bearing arms for self-defense. Because the OGM law only establishes conditions on the commercial sale of firearms, it falls within a class of regulations that the Supreme Court has endorsed as presumptively lawful. *See District of Columbia v. Heller*, 554 U.S. 570, 626-627 (2008). And even if this Court were to reach *Bruen*'s historical inquiry, the law is also consistent with this Nation's historical tradition of firearm regulation as demonstrated by the numerous analogous historical regulations identified by the State. At a minimum, the State's

1

arguments establish "serious questions going to the merits," which is sufficient for stay relief. *See, e.g.*, *Leiva-Perez v. Holder*, 640 F.3d 962, 966-967 (9th Cir. 2011) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

Plaintiffs' opposition also fails to engage with the Attorney General's arguments regarding the irreparable injury likely to occur in the absence of a stay. In particular, bulk firearm purchases would become legal in California, causing an increase in illegal firearms trafficking and threatening public safety. A stay pending appeal would avoid this abrupt change in the status quo while this Court resolves the serious legal question of whether the OGM law is constitutional. Meanwhile, the individual plaintiffs and other law-abiding California residents will remain able to purchase firearms for self-defense while this appeal is pending, so long as they comply with the OGM law's timing requirements.

## ARGUMENT

### I. THE ATTORNEY GENERAL IS LIKELY TO SUCCEED ON THE MERITS

The individual plaintiffs in this case have admitted that the OGM law does not prevent them from keeping and bearing firearms for self-defense. They claim instead that the OGM law "hinders" their right to acquire firearms. Opp. 6. But under the OGM law, individuals, including those who already possess multiple firearms, can acquire a firearm from a licensed dealer—and can purchase another

2

firearm just 30 days later. Indeed, by its terms, the OGM law comes into play only if a would-be firearm purchaser *already has purchased a firearm* within the past 30 days.

In other words, the OGM law is merely a condition on the commercial sale of firearms. Plaintiffs do not dispute this characterization, or that *Heller* deemed such regulations to be "presumptively lawful." Instead, they suggest that courts must still conduct the *Bruen* historical analysis for all such regulations. Opp. 7-8. That argument is misplaced. The historical analysis is only necessary where a regulation meaningfully constrains the ability to acquire firearms and ammunition. *See Gazzola v. Hochul*, 88 F.4th 186, 195-197 (2d Cir. 2023) (upholding, without conducting a historical analysis, the district court's denial for preliminary injunctive relief on a Second Amendment claim after determining that the challenged commercial laws regulating the sale and transfer of firearms were presumptively lawful because they were not "so restrictive that [they] threaten[] a citizen's right to acquire firearms"); *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 416 (4th Cir. 2021) (citation omitted), *vacated on other grounds*, 14 F.4th 322 (4th Cir. 2021); *cf. Teixeira v. County of Alameda*, 873 F.3d 670, 680 (9th Cir. 2019) (en banc) (holding that plaintiff lacked a Second Amendment claim due to absence of allegations that zoning ordinance "meaningfully inhibit[ed]" his ability to acquire a firearm).

Even if it were necessary to conduct the *Bruen* historical analysis, a more "nuanced approach" would apply in this case because technological and economic changes have made firearms more inexpensive and more widely available for purchase than in the founding and Reconstruction eras. 597 U.S. at 27. In addition, the societal concerns regarding straw purchases and firearms trafficking did not exist during the founding and Reconstruction eras to the same extent that they exist today.

Applying a more nuanced analogical approach, the State provided a number of historical regulations that are relevantly similar to the OGM law. D. Ct. Dkt. 59; *see also* Mot. 14-15. Just like the district court, plaintiffs claim that each historical regulation identified by the State is not relevantly similar because it did not have an identical purpose and an identical burden. Opp. 11-12, 13, 15, 16. For example, plaintiffs distinguish gunpowder regulations because such regulations were intended to prevent fires rather than firearms trafficking and set absolute limits on the quantity of gunpowder that could be possessed rather than setting "temporal limit[s]" on its acquisition. Opp. 11. Plaintiffs' attempts at distinguishing the historical regulations impose exactly the kind of "regulatory straightjacket" that *Bruen* warned against and improperly require the State to identify a historical statute that is a "twin" or "dead ringer" for the challenged law. 597 U.S. at 30. Indeed, this Court has recently cautioned against such a "divide-

4

and-conquer" approach to *Bruen*'s historical inquiry. *United States v. Perez-Garcia*, 96 F.4th 1166, 1191 (9th Cir. 2024).

Plaintiffs also attempt to discount the State's historical regulations because some came from the 19th century, Opp. 11-12, 13, and others discriminated against Native Americans, Opp. 12. Neither of these arguments has merit, and the first conflicts with circuit precedent. *Bruen* does not limit the time period for analysis of relevant laws to those in the founding era. Reconstruction-era regulations also bear particular importance because, as noted in *Bruen*, the Second Amendment was made applicable to the states not in 1791, but in 1868, with the ratification of the Fourteenth Amendment. 597 U.S. at 37-38; *see also id*. at 34 (stating that "constitutional rights are enshrined with the scope that they were understood to have *when the people adopted them*") (emphasis added); *see also, e.g., Perez-Garcia*, 96 F.4th at 1191 (considering nineteenth century surety statutes in the historical analysis); *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). Further, the State identified a number of historical regulations spanning the 18th and 19th centuries that, "when considered as a whole," show a historical tradition of regulating the availability or sale of handguns and ammunition in the interest of public safety. *Perez-Garcia*, 96 F.4th at 1191.

As for laws that discriminated against Native Americans, those laws can still confirm enduring traditions of firearm regulation even if Defendants disapprove of

5

their particular odious application in the past. *See* William Baude & Stephen E. Sachs, *Originalism & the Law of the Past*, 37 L. & Hist. Rev. 809, 813 (2019) ("Present law typically gives force to past doctrine, not to that doctrine's role in past society."); *see also* Jacob D. Charles, *On Sordid Sources in Second Amendment Litigation*, 76 Stan. L. Rev. Online 30, 37 (2023) ("Without a full picture of past laws—the prosaic and prejudiced alike—courts risk impermissibly narrowing the range of legislative options the ratifiers understood to be consistent with the right to keep and bear arms."). This approach aligns with this Court's historical analysis in *Teixeira*, and its discussion regarding firearms restrictions on Native Americans enacted during the colonial era. 873 F.3d at 685. And there is no merit to plaintiffs' alternative argument that such laws can be set aside because they "restrict[ed] the sale of arms" and "imposed neither a quantity nor time limitation similar to that of the OGM law." Opp. 13. If anything, that suggests that these historical precursors were *more* burdensome than the OGM law, and, as discussed earlier, *Bruen* does not require a "historical twin."

 At bottom, the Attorney General has demonstrated that he is likely to succeed on the merits of this appeal. And at an absolute minimum, this appeal presents a "substantial case on the merits" and "serious legal questions," which is all that is needed to support a stay where—as here—"the other factors support the stay." *Leiva-Perez*, 640 F.3d at 966, 968; *see also Rhode v. Becerra*, 2020 WL 9938296,

6

\*1 (9th Cir. May 14, 2020) (concluding that a stay applicant has made a strong showing that he is likely to succeed on the merits when he has shown a substantial case for relief on the merits (citing *Leiva-Perez*, 640 F.3d at 968)).

## II. THE EQUITABLE FACTORS WEIGH STRONGLY IN FAVOR OF A STAY

Turning to the equitable factors, plaintiffs acknowledge that the State would suffer harm when one of its duly enacted laws is enjoined, but argue that such harm is not dispositive when balancing the equities in this case. Opp. 17. But plaintiffs have not identified any irreparable injury sufficient to outweigh the State's substantial interest in the continued enforcement of its laws, and in preventing illegal firearms trafficking.

As this Court has acknowledged, the State has a valid interest in the continued enforcement of its statutes. Indeed, this Court previously granted a stay of a district court's preliminary injunction after recognizing the evident harm that would otherwise result from enjoining requirements that "were in effect for more than nine months before the district court's preliminary injunction." *Rhode*, 2020 WL 9938296 at \*1. Such reasoning applies with greater force here because the OGM law has prohibited bulk purchases of handguns for more than two decades. Moreover, unless a statute is "obvious[ly] . . . unconstitutional," there is a strong "public interest" in its continued enforcement and application during the pendency

7

of a challenge to its validity. *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1127 (9th Cir. 2008).

In addition, the district court's injunction would result in an increase in straw purchases and illegal firearms trafficking, jeopardizing public safety. Mot. 16. Instead of addressing these harms, plaintiffs simply characterize them as "speculative arguments" and "[u]nfounded assumptions about public safety." Opp. 18. These harms are not speculative or unfounded. The record shows that OGM laws reduce straw purchases and illegal firearms trafficking. Mot. 16, Ex. 6 (Bisbee Decl.) ¶¶ 9-11, 25.

Plaintiffs do not raise any arguments as to irreparable injury that are distinct from their arguments on the merits of their constitutional claim. Opp. 18-19. And, as discussed above, the Attorney General is likely to succeed on the merits. But even with a stay, the individual plaintiffs and other law-abiding Californians will remain able to purchase and possess firearms, and to use those firearms for self-defense and other lawful-purposes while this Court considers the serious legal questions presented by this appeal. The equitable considerations thus favor the State.

## CONCLUSION

The Court should stay the district court's judgment and injunction pending appeal.

Dated: April 19, 2024    Respectfully submitted,

Rob Bonta
Attorney General of California
Thomas S. Patterson
Senior Assistant Attorney General
Anthony R. Hakl
Supervising Deputy Attorney General

*/s/ Jerry T. Yen*

Jerry T. Yen
Deputy Attorney General
*Attorneys for Defendants-Appellants Rob Bonta and Allison Mendoza, in their official capacities*

9

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply brief complies with the type-volume limitation of Ninth Circuit Rules 27-1 and 32-3(2) because it does not exceed 10 pages and consists of 1,857 words, excluding the documents listed at Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f). This reply brief complies with the typeface and the type style requirements of Federal Rule of Appellate Procedure 27 because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: April 19, 2024                                              /s/ Jerry T. Yen